UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DISABILITY RIGHTS LOUISIANA, | * | CIVIL ACTION NO.: _____ |
| | * | |
| PLAINTIFF | * | SECTION _____ |
| | * | |
| VS. | * | JUDGE _____ |
| | * | |
| DR. COURTNEY N. PHILLIPS, IN HER OFFICIAL CAPACITY AS THE SECRETARY OF THE LOUISIANA DEPARTMENT OF HEALTH, | * | |
| DEFENDANT. | * | |

**COMPLAINT**

**INTRODUCTION**

1.  Plaintiff, Advocacy Center, currently doing business as Disability Rights Louisiana[1] (hereinafter "DRLA"), is the designated Protection and Advocacy ("P&A") system for individuals with disabilities in the state of Louisiana pursuant to the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801 et seq.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42 U.S.C. §§ 15001 et seq.; and the Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C. § 794e (hereinafter collectively referred to as the "P&A Acts"). These statutes give Plaintiff broad authority to protect and advocate for the rights of people with disabilities. These statutes, collectively, also grant state protection and advocacy systems broad access to the records of any

---

[1] Advocacy Center changed its name in early 2020 to Disability Rights Louisiana. The organization and mandates are the same, only the name is different.

individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access. 42 U.S.C. § 15043(a)(2)(I)(i); 42 U.S.C. § 1080(a)(4)(A); and 29 U.S.C. § 794e(f)(2).

2. DRLA has probable cause to believe that Westside Habilitation Center is subjecting residents with Developmental Disabilities in this state-funded, privately run, facility to abuse and neglect related to unforeseen deaths of at least 2 residents in the past 6 months, the inadequate conditions of its housing, residents lack of access to adequate medical care, inadequate access to required services and programs, and its unlawful practice of maintaining residents in an environment more restrictive than is otherwise necessary.

3. As a result of its probable cause findings, DRLA has initiated an investigation of these serious claims. Among other things, Plaintiff is investigating whether residents are being subjected to unnecessary institutionalization in violation Title II part A of the ADA and *Olmstead*.

4. The Defendants' actions set forth below have unlawfully and intentionally interfered with Plaintiff's investigation into these abuses, thereby impeding Plaintiff's ability to carry out its responsibilities under the P&A Acts, and subjected the Plaintiff to concrete harm to its statutorily defined interests.

## JURISDICTION AND VENUE

5. DRLA brings this action for declaratory and injunctive relief for violation of the Developmental Disabilities Assistance and Bill of Rights Act ("the PADD Act"), 42 U.S.C. §§ 15001 et seq.

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), which grant this Court original jurisdiction in all actions authorized by 42

U.S.C. § 1983 to redress the deprivation under color of State law of any rights, privileges, or immunities guaranteed by the United States Constitution and Acts of Congress.

7. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1). Defendant is a state agency whose primary place of business is in Baton Rouge, Louisiana.

## PARTIES

8. Plaintiff DRLA, is a non-profit corporation designated as an "eligible system" as those terms are used and defined in the P&A Acts. Plaintiff provides protection and advocacy to people with disabilities.

9. DRLA receives federal funds pursuant to the PADD Act and is thereby obligated to provide protection and advocacy services for individuals with developmental disabilities. Under the PADD Act, DRLA is also authorized to investigate suspected incidents of abuse and neglect and to pursue administrative, legal, and other remedies on behalf of individuals with developmental disabilities. In order to carry out its investigative functions, DRLA is granted the authority to have access to individuals with disabilities in the locations where they receive services, and to have access to their medical and other records under certain conditions. 42 U.S.C. § 15043(I); 45 C.F.R. § 1326.25(a).

10. Defendant Dr. Courtney N. Phillips is the Secretary of the Louisiana Department of Health (hereinafter "LDH"). LDH is a service provided by the state of Louisiana. It is an agency charged with maintaining the health and safety of individuals in state funded institutions. Defendant Phillips is charged with overall responsibility for the administration of LDH. All of Defendant's complained-of actions were taken under color of state law for purposes of 42 U.S.C. § 1983. She is being sued in her official capacity only.

**FACTUAL ALLEGATIONS**

11. DRLA has been investigating allegations of improper restraints, questionable death circumstances, inappropriate or harmful living situations, denial of access to mail and telephone, and lack of required medical care at Westside Habilitation Center for over 5 years.

12. DRLA administers Louisiana's Community Living Ombudsman Program (CLOP). CLOP was created under Louisiana Law "for the purpose of monitoring care received by persons with developmental disabilities residing in state-licensed facilities for persons with developmental disabilities funded through the [LDH]." LA R.S. 28:453.1. To this end, Ombudsmen must "receive, investigate, and resolve complaints made by or on behalf of persons who live in facilities… concerning any act, omission, practice, or procedure that may adversely affect the health, safety, or welfare of any such person" and "visit such facilities on a regular basis." LA R.S. 28:453.2.

13. Between January 1, 2021 and July 13, 2021, DRLA's CLOP Ombudsmen filed 10 formal complaints with the Louisiana Department of Health regarding Westside Habilitation Center and the treatment of the residents in their care. These formal complaints addressed the following issues: improper restraints; physical assault by peer; alleged sexual assault; severe weight loss; injuries in restraint; sexual abuse; inappropriate or excessive physical restraints; seclusion; physical assault; denied access to telephone; failure to receive timely medical care; injuries while in restraints; failure to provide needed or appropriate medical treatment; excessive medication; missing funds; due process violations; housing residents in an unlicensed facility; lack of appropriate health and behavioral supports, unsanitary conditions, lack of appropriate health care, insufficient staffing leading to resident death, failure to timely implement emergency protocol excessive medication use and failure to carry out physician order.

14.     Regular observations by CLOP Ombudsmen of these and other pervasive issues, not only confirmed many of these concerns but clearly show that these complaints have not been adequately addressed by LDH. As recently as the beginning of July 2021 DRLA staff and Ombudsmen observed and had reported to them many of the above issues across a variety of homes throughout the Westside facility.

15.     On March 25, 2021, DRLA requested from LDH, in an email to LDH Deputy General Counsel, "electronic copies of the following records: All surveys for each of the facilities listed below; Deficiency reports and corresponding plans of correction for each of the facilities listed below; Death reports for each of the facilities listed below; an Online Tracking Incident System (OTIS) reports for each of the facilities listed below" followed by a listing of the 28 licensed ICF/DD facilities, including addresses and phone numbers for each home, that collectively are run by Westside Habilitation Center.[2]

16.     On March 25, 2021, an email from LDH Records Center was sent to DRLA stating that,

> LDH will provide any records discovered that are responsive to items 1 & 2 of your request, as these are public records. However, since your request lacks specificity about the individual(s) that have allegedly been subject to abuse or neglect, it is insufficient to meet the requirements under 42 U.S.C. § 15043(a)(2)(I) in order to assert your P&A authority with regard the records requested in items 3 & 4 of your request. In accordance with La. R.S. 13:3715.3 and HIPAA, the items requested in 3 & 4 are confidential and will not be produced.

17.     It is understood, that in referring to items 3 & 4 of the record request, LDH was referring to the request for "Death reports" as number 3 and the request for "Online Tracking Incident System (OTIS) reports" as number 4.

---

[2] The list of home names is as follows: Rapides, Wilson, Monroe, Hayes, Washington, Buchanan, Pierce, Fillmore, Polk, Jackson, Lincoln, Harding, Jefferson, John Tyler, Van Buren, Grant, Johnson, Roosevelt, Visions, Taft, McKinley, Cleveland, Harrison, Taylor, Madison, Adams, Garfield, and Westside.

5

18. On April 14, 2021, DRLA replied to LDH via electronic mail reiterating the request for items 3 and 4 stating in part that,

> Per 42 U.S.C. §15043(a)(2)(B), we "have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." Per 42 U.S.C. §15043(a)(2)(J)(i), we "have access to the records of individuals described in subparagraphs (B) and (I), and other records that are relevant to conducting an investigation, under the circumstances described in those subparagraphs, not later than 3 business days after the system makes a written request for the records involved." It goes on to state that we are entitled to immediate access to records, without consent from another party, in any case of the death of an individual with a developmental disability. §15043(a)(2)(J)(ii).
>
> As you are likely aware, it is the P&A, not the State that makes the determination as to probable cause and directs the needs of our investigation. As such, we renew our original request for items 3&4 of our original request:
>
> - Death reports for each of the facilities listed
> - Online Tracking Incident System (OTIS) reports for each of the facilities listed

19. On April 16, 2021, a letter from LDH Records Center was emailed to DRLA stating its reasoning for refusing to provide records by stating, in part, that,

> Nowhere in your request letter do you identify a specific disabled individual(s) who has allegedly been subjected to abuse or neglect, nor do you provide the requisite authorization or evidence that the client's authorized representative has failed or refused to act on behalf of the client, as is required under 42 U.S.C. § 15043(a)(2)(I). Without this information, LDH cannot provide the requested information while also safeguarding the confidentiality of other individuals who were not implicated in the purported reports upon which you have based your investigation.
>
> Furthermore, while LDH acknowledges that DRLA is to be the final arbiter under the P&A of whether probable cause exists under Subsections (I) and (J) of the Act, DRLA must actually assert that it has determined that probable cause exists under one of the relevant provisions in order for this authority to attach. You have not indicated in either of your letters that DRLA has made such a determination, or provided any information regarding the disabled individual(s) who was the subject of this determination. It is LDH's position that because Congress delineated specific situations under which the P&A authority may have access to records, it did not intend for the P&A Act to provide the P&A authority blanket access to ALL

records of individuals with developmental disabilities when the P&A authority has not indicated that it is investigating *specific* incidents of abuse/neglect, serious and immediate jeopardy, and/or death situations.

For these reasons, LDH cannot provide the requested death reports and OTIS reports pursuant to DRLA's P&A authority because DRLA has failed to provide sufficient information to allow LDH to release PHI without violating its duties under HIPAA. Additionally, the requested records are exempt from disclosure under Louisiana Public Records Law, La. R.S. 44:1 *et seq.*, and considered to be confidential peer review records in accordance with La. R.S. 13:3715.3.

20. On April 30, 2021, DRLA replied to LDH via electronic mail reiterating and clarifying the request for items 3 and 4 stating in part that,

Regarding our third request which was for death records of WHC residents for the time period between September 26, 2017 and the present., the law is clear that they fall under our authority to obtain. The law is also clear that there is no requirement to seek authorization from anyone prior to receiving them under our access authority. We have probable cause upon which to base our request for the death records of all residents from WHC as stated in our original request. If your position continues to be to refuse production of these records, we will act to enforce our access authority.

As for our request for all critical incident reports, we respectfully disagree with your interpretation of the law. We do believe we are entitled to receipt of the records requested. However, at this time we would be willing to amend our original request to instead request a registry of all WHC residents who had a critical incident report filed about them between September 26, 2017 and the present, the timeframe originally specified in the March 25, 2021 letter. This registry should include the name of each individual as well as contact information. If the individual has a legal guardian, for instance if they are under an interdiction or continuing tutorship, the name and contact information should be included for the legal guardian as well.

21. On May 19, 2021, a letter from LDH Records Center was emailed to DRLA stating its reasoning for refusing to provide records by stating, in part, that:

Accordingly, LDH maintains its position that your request attempts to expand the scope of the PADD Act, from providing the P&A authority access to records pursuant to an investigation into complaints of abuse, neglect, or serious and immediate jeopardy, to essentially providing the P&A system with authority to compel records production as a means of searching for allegations of misconduct without identifying the individuals about whom the P&A system is concerned or even a factual basis to support its contention that incidents of abuse and neglect or serious and immediate jeopardy may have occurred. As stated in our previous letter,

7

LDH believes this to be an overly broad interpretation of the applicable law. The PADD Act provides clear and specific instances in which records may be obtained without authorization, all of which specifically mention a probable cause determination that a particular **individual** is at risk. LDH does not believe that in specifying these particular circumstances that Congress intended for the P&A Act to provide blanket access to ALL records of individuals with developmental disabilities when the P&A system fails to identify specific incidences of abuse/neglect, serious and immediate jeopardy, and/or death situations that it is investigating.

22. As of the date of this Complaint, Defendant has failed to provide DRLA with the complete set of records it requested on March 25, 2021.

## CAUSE OF ACTION 1 – the PADD Act

23. Plaintiff realleges the matters set forth above in paragraphs 1 through 21.

24. The PADD Act and its implementing regulations give DRLA, as Louisiana's designated P&A, the authority to investigate incidents of abuse and/or neglect of individuals with developmental disabilities if the incidents are reported to the system or there is probable cause to believe the incidents occurred. 42 U.S.C. § 15043(a)(2)(B); 45 C.F.R. § 1326.25(a)(2)-(5).

25. The PADD Act and its implementing regulations give DRLA the authority to access all individual records of a person who has died, and "no consent from another party is needed." 45 C.F.R. § 1326.25(a)(5).

26. All individuals who reside at Westside Habilitation Center have been deemed individuals with developmental disabilities by LDH as that is a requirement for admission to an ICF/DD and Medicaid reimbursement for their placement.

27. By refusing DRLA's written requests for access to investigative records, Defendant has deprived DRLA of its statutory rights and mandatory obligations under the PADD Act, 42 U.S.C. § 15001 et seq., and the regulations implementing the Act.

28. Defendant's violation of the PADD Act irreparably harms DRLA by preventing it from carrying out its federally mandated obligations under the Act.

29. Unless Defendant is enjoined to provide DRLA the access required by the PADD Act, DRLA will continue to be irreparably harmed and will be unable to protect and advocate for persons with disabilities as required by the PADD Act.

## CAUSE OF ACTION 2 – Section 1983

30. Plaintiff realleges the matters set forth above in paragraphs 1 through 28.

31. Defendant's complained-of actions were taken under color of, and pursuant to the authority granted to her, under state law.

32. Defendants' acts and omissions set forth above have deprived Plaintiff of rights under the P&A Acts, including, but not limited to, the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801 et seq.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42 U.S.C. §§ 15001 et seq.; and the Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C. § 794e. Therefore, Plaintiff has a cause of action pursuant to 42 U.S.C. §1983, because Plaintiff has been denied a federally protected right by state actors acting under color of law.

33. Plaintiff is entitled to recover its attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. §1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendant's refusal to provide the requested records violates the PADD Act, including 42 U.S.C. §;

2.	Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendant's refusal to provide the requested records violates 42 U.S.C. § 1983;

3.	Declare that Defendants have an affirmative obligation to assure that the access rights granted to Plaintiff by the P&A Acts are fully and uniformly implemented at all of Defendants' facilities;

4.	Grant Plaintiff preliminary and permanent injunctions requiring Defendant to provide DRLA with access to the requested records;

5.	Preliminarily and permanently enjoin Defendant from violating Plaintiff's rights under the P&A Acts;

6.	Retain jurisdiction over this action to ensure Defendant's compliance with the mandates of the PADD Act;

7.	Waive the security requirement of Rule 65(c);

8.	Award DRLA attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b); and

9.	Award such other, further or different relief as the Court deems equitable and just.

Respectfully submitted this 22nd day of July, 2021,

*/s/ Melanie Bray*
Melanie Bray, La. Bar No. 37049
Debra J. Weinberg, La. Bar No. 32760
Ronald K. Lospennato, La. Bar No. 32191
Disability Rights Louisiana
8325 Oak Street
New Orleans, LA 70118
504-208-4151
504-272-2531 (fax)
mbray@disabilityrightsla.org
dweinberg@disabilityrightsla.org
rlospennato@disabilityrightsla.org